ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARLIZ DE LA CRUZ HERNÁNDEZ<br><br>Recurrido<br><br>v.<br><br>RIMAS ENTERTAINMENT, LLC; **NOAH KAMIL ASSAD BYRNE**; BENITO A. MARTÍNEZ OCASIO; RIMAS CLASSICS, LLC; CORPORACIÓN ABC Y CORPORACIÓN XYZ, COMPAÑÍA ASEGURADORA ABC; FULANA DE TAL Y MENGANO DE TAL; JUAN DEL PUEBLO Y FULANO DE TAL; & COMPAÑÍA X<br><br>Peticionario | KLCE202500026 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2023CV01925<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 14 de febrero de 2025.

Comparece el señor Noah Assad Byrne ("el señor Assad Byrne" o "el demandado-peticionario") mediante un *Recurso de Certiorari*. Nos solicita la revisión de la *Resolución* emitida el 13 de noviembre de 2024, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("el foro primario" o "el foro *a quo*"). En virtud del referido dictamen, el foro primario declaró *No Ha Lugar* la desestimación solicitada por el demandado-peticionario. Reiteró, a la luz de lo dictado en la *Sentencia Parcial* emitida el 13 de septiembre de 2024, que no procedía la desestimación de la causa de acción sobre daños y perjuicios en la modalidad de responsabilidad vicaria instada contra el señor Assad Byrne.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari*, y consecuentemente, revocamos la *Resolución* recurrida.

**I.**

El 1 de marzo de 2023, la señora Carliz De La Cruz Hernández ("la señora De La Cruz Hernández" o "la parte recurrida") instó una *Demanda* en daños y perjuicios, derechos de imagen y derechos morales de autor en contra de (1) Rimas Entertainment, LLC, (2) Rimas Classic, LLC, (3) el señor Benito A. Martínez Ocasio ("el señor Martínez Ocasio"), (4) Noah Assad, LLC y (5) el señor Assad Byrne, entre otros.[1] En lo pertinente a la controversia ante nos, aseveró que el aquí demandado-peticionario es el manejador de la carrera del señor Martínez Ocasio. Respecto a la contención principal, sostuvo que el 3 de mayo de 2022, el señor Jomar D. Dávila Nevárez ("el señor Dávila Nevárez"), en representación del señor Assad Byrne y otros codemandados, le comunicó a la demandante que le interesaba comprar su voz grabada con la expresión de *Bad Bunny Baby* a cambio de dos mil dólares ($2,000.00). En respuesta, adujo que rechazó dicha oferta, toda vez que la utilización de su voz violenta sus derechos. Por tanto, indicó que solo formalizaría un acuerdo si se establecía por escrito.

No obstante, la demandante arguyó que tras una serie de comunicaciones con el personal de Rimas, rechazó nuevamente la solicitud para autorizar el uso de su voz. A pesar de lo anterior, aseveró que el 6 de mayo de 2022 se publicó la canción *Dos Mil 16* en el álbum musical *Un verano sin ti*, en el cual aparece la expresión *Bad Bunny Baby* grabada con su propia voz. Señaló que ese lanzamiento tuvo propósitos comerciales, y a su vez, ocurrió sin su consentimiento. En vista de ello, argumentó que tal proceder constituyó un acto de negligencia crasa, mala fe y un ataque a su intimidad, su moral y su dignidad por todas las partes demandadas, quienes tenían y tienen conocimiento de estos hechos.

Ante tales alegaciones, el 27 de junio de 2024, el señor Assad Byrne presentó una *Solicitud de Desestimación al Amparo de la Regla 10.2(5) de Procedimiento Civil.*[2] En esencia, argumentó que la *Demanda* instada en su

---

[1] Apéndice de la parte peticionaria, págs. 23-65.
[2] Apéndice de la parte peticionaria, págs. 66-99.

contra incumple con el estándar de plausibilidad según discutido en *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, 213 DPR 523 (2024). Señaló que tan solo es mencionado directamente en tres ocasiones, entiéndase en las alegaciones (23), (24) y (75). No obstante, sostuvo que aun asumiendo que tales alegaciones son ciertas, no se configura una causa de acción en su contra, toda vez que no puede atribuírsele las acciones realizadas por otros. En esa línea, alegó que en todas las instancias en las cuales se menciona al señor Dávila Nevárez no se establece que este tiene capacidad para hacer representaciones a su nombre. Por tanto, manifestó que no responde por las actuaciones de terceras personas. Por lo anterior, sostuvo que las alegaciones presentadas en su contra son genéricas, no específicas, y a todas luces, insuficientes.

Luego de una serie de incidencias procesales atendidas por este Tribunal de Apelaciones[3], el 2 de octubre de 2024, la señora De La Cruz Hernández sometió una *Oposición a la Moción de Desestimación presentada por Noah K. Assad Byrne*.[4] Argumentó que al dar por ciertas las alegaciones en las que se hace referencia al señor Assad Byrne como manejador del artista y dueño de Rimas Entertaiment es evidente que este tiene un interés, pues obtuvo un beneficio personal del éxito del disco el cual contiene el uso no autorizado de la voz de la demandante. En ese línea, aseveró que cumple plenamente con el requisito de las alegaciones bajo las Reglas de Procedimiento Civil. Agregó que la *Demanda* proporciona al demando-peticionario una notificación adecuada respecto a las alegaciones en su

---

[3] Surge del expediente apelativo que, en respuesta a la solicitud de desestimación objeto de este recurso, el 2 de julio de 2024, la demandante sometió una *Moción bajo la Regla 10.7 y 10.8 de Procedimiento Civil para que se Declare Improcedente la Moción de Desestimación Presentada por Noah Assad Byrne*. Ante la denegatoria de dicha moción, el 23 de agosto de 2024, este Tribunal de Apelaciones expidió el recurso de *certiorari* en el caso KLCE202400758 a los fines de revocar la *Resolución* impugnada. En aquella ocasión, emitimos el siguiente pronunciamiento recogido en la *Sentencia* apelativa:

> La presentación de una primera moción de desestimación, por insuficiencia en el diligenciamiento del emplazamiento, no impide que una segunda solicitud sea instada al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra*. Por todo lo cual, resulta forzoso concluir que incidió el foro primario al resolver que el señor Assad Byrne estaba impedido de presentar una segunda solicitud de desestimación. El TPI venía obligado a resolver en sus méritos la moción de desestimación instada por el Peticionario.

[4] Apéndice de la parte peticionaria, pág. 100-130.

contra. Por lo que, peticionó que el foro primario declarara *No Ha Lugar* la desestimación solicitada.

Pendiente aún la desestimación solicitada por el señor Assad Byrne, el 13 de septiembre de 2024, el foro primario emitió y notificó una *Sentencia Parcial* en la que declaró *Ha Lugar* la desestimación en atención a una serie mociones presentadas por el señor Martínez Ocasio, Rimas Entertaiment y Rimas Classic.[5] Al respecto, dispuso lo siguiente:

> En consecuencia, este tribunal desestima las siguientes causas de acción: (1) derecho a la integridad y de atribución en virtud de la Ley Núm. 55-2012, supra; (2) enriquecimiento injusto por el uso comercial y no comercial de la grabación; (3) actos propios por la intervención de terceras personas para negociar el uso de la voz de la demandante (la grabación); (4) derecho a la intimidad como causa de acción en la alternativa, y (5) violación a los derechos antes mencionados por el uso no autorizado de la grabación en los conciertos de Martínez Ocasio en Puerto Rico. En cambio, se mantiene la causa de acción por daños y perjuicios en modalidad vicaria por el uso no consentido de la grabación en la canción "Dos Mil 16", y por el uso comercial de imagen en la referida canción sin autorización de la demandante, tal y como requiere la Ley Núm. 139-2011, supra. También, reiteramos que la presente Demanda se desestima sin perjuicio con relación a las codemandadas Rimas Classics, LLC y Noah Assad, LLC, por falta de alegaciones en contra de estas. Se ordena, entonces, la continuación de los procedimientos en lo que concierne a las dos causas de acción arriba indicadas.[6]

Continuado el trámite judicial, en lo pertinente al recurso ante nos, el 13 de noviembre de 2024, el foro *a quo* emitió una *Resolución*, notificada al día siguiente, en la cual declaró *No Ha Lugar* la *Solicitud de Desestimación al Amparo de la Regla 10.2(5) de Procedimiento Civil* presentada por el señor Assad Byrne.[7] Al respecto, emitió el siguiente pronunciamiento:

> Véase lo resuelto en Sentencia Parcial emitida el día 13 de septiembre de 2024. En cuanto a las causas de acción por daños y perjuicios en modalidad vicaria por el uso no consentido de la grabación en la canción "Dos Mil 16" y por el uso comercial de imagen en la referida canción sin autorización de la demandante, tal y como requiere la Ley Núm. 139-2011, se declara No Ha Lugar la desestimación presentada por el codemandado, Noah Kamil Assad Byrne, el día 27 de junio de 2024.[8]

Oportunamente, el 21 de noviembre de 2024, el señor Assad Byrne presentó una *Solicitud de Reconsideración* en la cual reiteró que la *Demanda* no aduce hechos específicos que le vinculen como patrono o empleador de

---

[5] Apéndice de la parte peticionaria, págs. 131-179.
[6] Apéndice de la parte peticionaria, págs. 178-179.
[7] Apéndice de la parte peticionaria, págs. 1-2.
[8] Apéndice de la parte peticionaria, pág. 1.

cualquier persona cuya conducta pueda imputársele bajo el marco de responsabilidad vicaria.[9] Especificó que la demandante no ha identificado hechos demostrativos que establezcan que el señor Dávila Nevárez sea su empleado o su contratista independiente, ni siquiera existe una relación de autoridad o supervisión entre ellos. Sostuvo, además, que las alegaciones no justifican entender que proceda el descorrimiento del velo corporativo de Rimas Entretaiment para extender la responsabilidad hacia él. Por tanto, arguyó que la acción legal se limita a presentar alegaciones genéricas y conclusiones legales que no le colocan en una posición para preparar una defensa adecuada. En vista de lo anterior, peticionó la reconsideración del dictamen impugnado.

Luego de considerar la *Solicitud de Reconsideración*, el 12 de diciembre de 2024, el foro primario emitió y notificó una *Resolución*, en la cual declaró *No Ha Lugar* la referida petición.[10]

Inconforme aún, el 10 de enero de 2025, el señor Assad Byrne recurrió ante este Tribunal de Apelaciones mediante un *Recurso de Certiorari*. En su escrito, presentó los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EN EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SU RESOLUCIÓN DE 13 DE NOVIEMBRE DE 2024 AL NEGARSE A DESESTIMAR LA CAUSA DE ACCIÓN POR VIOLACIÓN DE LOS DERECHOS SOBRE LA PROPIA IMAGEN AL AMPARO DE LA LEY 139-2011, AL NO CONSIDERAR QUE LAS ALEGACIONES CARECEN DE LA ESPECIFICIDAD Y FUNDAMENTOS NECESARIOS PARA ESTABLECER UNA RESOLUCIÓN CAUSAL DIRECTA ENTRE LOS ACTOS IMPUTADOS Y LOS DAÑOS RECLAMADOS, NI HECHOS DEMOSTRATIVOS QUE DEMUESTREN EL USO NO CONSENTIDO DE LA IMAGEN O VOZ DE LA DEMANDANTE CON FINES COMERCIALES, SIENDO ESTE UN ELEMENTO ESENCIAL PARA QUE PROCEDA UNA RECLAMACIÓN BAJO LA LEY 139-2011.

> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SU RESOLUCIÓN DE 13 DE NOVIEMBRE DE 2024 AL NEGARSE A DESESTIMAR LA CAUSA DE ACCIÓN PENDIENTE POR DAÑOS O PERJUICIOS BAJO EL CÓDIGO CIVIL, INCLUYENDO LA MODALIDAD VICARIA POR EL ALEGADO USO NO CONSENTIDO DEL ESTRIBILLO, YA QUE CONLLEVARÍA DUPLICIDAD DE REMEDIOS.

Sometido el recurso, el 15 de enero de 2025, esta Curia emitió una *Resolución* en la cual concedió a la parte recurrida el término de diez (10) para presentar su oposición a la expedición del auto de *certiorari* de conformidad a

---

[9] Apéndice de la parte peticionaria, págs. 5-19.
[10] Apéndice de la pete peticionaria, pág. 20.

la Regla 37 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 37. Tras la concesión de una prórroga, el 29 de enero de 2025, la señora De La Cruz Hernández presentó su *Escrito en Oposición a la Expedición del Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.

### A. Recurso de certiorari

Es norma reiterada que, el auto *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Artículo 670 del Código de Enjuiciamiento Civil de 1933, Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva de este recurso "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Ahora bien, el ejercicio de nuestra discreción judicial no es absoluto. A tales efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias que activan nuestras facultades revisoras ante las resoluciones y las órdenes interlocutorias:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

A pesar de que la Regla 52.1 de Procedimiento Civil, *supra,* permite revisar las determinaciones interlocutorias recurridas, "la expedición del auto

y la adjudicación en sus méritos es discrecional". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En consonancia con lo anterior, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, preceptúa los criterios para la expedición de un auto de *certiorari*:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209. A su vez, la precitada disposición reglamentaria permite que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* pág. 176.

En atención a los preceptos discutidos, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). De manera similar, no debemos sustituir el criterio producto de la discreción judicial, salvo que se pruebe (1) una actuación con prejuicio o parcialidad; (2) craso abuso de discreción, o (3) una equivocación en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al., supra,* pág. 210. Así pues, nos corresponde ser cuidadosos y conscientes de la

naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 849 (2023).

### B. Moción de Desestimación por insuficiencia en las alegaciones

Nuestro esquema procesal no exige requisitos complicados para la redacción de una acción judicial. *Rivera Candela v. Universal Insurance Company*, 2024 TSPR 99, 214 DPR ___ (2024); *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020). A esos fines, la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, regula los elementos concernientes a las alegaciones, a saber: (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. Podrán, también, ser solicitados remedios alternativos o de diversa naturaleza. 32 LPRA Ap. V, R. 6.1.

Basta redactar una información inicial escueta de los hechos pues las alegaciones serán ampliadas "como resultado de los procedimientos posteriores de descubrimiento de prueba". *Rivera Candela v. Universal Insurance Company, supra* (citando a J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, 3a ed. rev., Bogotá, Ed. Nomos, S.A., 2023, pág. 92). Por tanto, "en la demanda no hay que especificar bajo qué disposición legal se reclama, basta con que de los hechos que esquemáticamente se alegan surja una causa de acción bajo cualquier ley". Íd.

Lo esencial es notificar a la parte adversa, a grandes rasgos, sobre cuáles son las reclamaciones en su contra para que pueda comparecer si así lo desea. *Torres, Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Sánchez v. Aut. de los Puertos,* 153 DPR 559, 569-570 (2001). A esos efectos, el documento relativo a la demanda debe incluir un mínimo de detalle que informe sobre los alegados actos lesivos que causaron el alegado perjuicio. *Rivera Candela v. Universal Insurance Company, supra; León v. Rest. El Tropical,* 154 DPR 249, 262 (2001). Es decir, debe contener un grado suficiente de información sobre las imputaciones que le permita a la parte demandada entender la sustancia de lo que debe defender. Íd.

No obstante, cuando la reclamación judicial instada carezca de alegaciones específicas o suficientes, la parte adversa tiene el derecho de solicitar la desestimación a tenor con la Regla 10.2(5) de Procedimiento Civil, *supra*, 32 LPRA Ap. V, R. 10.2(5). Véase, también, *Eagle Security v. Efrón Dorado,* 211 DPR 70, 83 (2023). El precitado inciso reglamentario dispone que procede la desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio. 32 LPRA Ap. V, R. 10.2(5). De tal modo, se viabiliza que la parte demandada pueda fundamentar la desestimación invocando la defensa de que la petición judicial deja de exponer una reclamación que justifique la concesión de un remedio. *Banco Popular de Puerto Rico v. Cable Media of Puerto*, 2025 TSPR 1; 215 DPR ___ (2025).

Ahora bien, como norma general, no procede la desestimación salvo se deduzca con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012). Por tanto, el tribunal tiene el deber de interpretar las alegaciones de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security v. Efrón Dorado, supra*, pág. 85. Le compete "ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida". Íd. Este análisis evita que un litigante quede privado de su día en corte, que es una medida procedente solo en casos extremos. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, 213 DPR 523, 534 (2024); *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003).

Conviene señalar que, el Tribunal Supremo de Puerto Rico en *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 397 (2022), discute el examen aplicable a las mociones fundamentadas en la insuficiencia de las alegaciones:

> [A]l interpretar de manera conjunta las citadas Reglas 6.1 y 10.2, podemos colegir que cuando se pretende desestimar la totalidad de una demanda que solicita remedios alternativos, se debe examinar si las alegaciones sustentan la concesión de dichos remedios. Es decir, como

las alegaciones pretenden bosquejar las distintas reclamaciones y proveer a cada una de ellas unos remedios, una moción de desestimación sobre la totalidad de la demanda debe mover la conciencia del juzgador a concluir que, si al dar por cierto las alegaciones bien hechas, no existe remedio al que la parte tenga derecho. El juzgador deberá auscultar, en ese sentido, si la parte demandante no tiene derecho alguno a que se ventile el pleito, ya sea al amparo del remedio principal o del alternativo.

Una vez el juzgador analice ponderadamente que, de manera principal o en la alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda. *Comisión v. González Freyre et al.*, 211 DPR 579, 615 (2023). Si luego comprende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la acción judicial, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se probarán las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros, supra,* pág. 534 (citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307).[11] En cambio, si concluye que las alegaciones cumplen con el estándar de suficiencia le corresponde denegar la petición de desestimación.

### III.

En el recurso que nos ocupa, el señor Assad Byrne señala que incidió el Tribunal de Primera Instancia al denegar la desestimación de la *Demanda,* toda vez que las alegaciones levantadas en su contra resultan genéricas y carecen de la especificidad necesaria para establecer que haya participado de forma directa en aquellos actos que impliquen el uso no autorizado de la voz de la señora De La Cruz Hernández. A su vez, argumenta que erró al negarse a desestimar la causa de acción de daños y perjuicios bajo el Código Civil en

---

[11] El profesor Hernández Colón discute el caso *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007), en el cual el foro supremo federal analiza la Regla 8 de Procedimiento Civil, equivalente a nuestra Regla 6.1 de Procedimiento Civil (2009). A la luz de este dictamen explica que al evaluar la plausibilidad de las alegaciones no es necesario exponer alegaciones bien elaboradas y detalladas. Ahora bien, puntualiza que las alegaciones deben contener una relación fática suficiente, que aceptada como cierta establezca que la reclamación del remedio es suficiente en su faz, es decir, que guíe al juzgador a hacer una inferencia razonable de que el demandado es responsable de la conducta alegada. Agrega que en el referido caso "se describió el estándar plausibilidad como aquel que requiere hechos suficientes que logren una expectativa razonable de que en el descubrimiento de prueba se revelará la evidencia que lo demuestre". R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil, supra,* pág. 280.

la modalidad de responsabilidad vicaria. Sostiene que la mera alusión a un tercero que actuó en representación del señor Assad Byrne no constituye por sí sola una base suficiente para atribuirle responsabilidad directa. En vista de ello, solicita que revoquemos el dictamen recurrido.

Por su parte, la señora De La Cruz Hernández detalla que el 3 mayo de 2022 el señor Dávila Nevárez le contactó en representación del señor Noah Assad, Rimas y el señor Martínez Ocasio. Según expone la demandante-recurrida, este tercero le expresó que le interesaba comprar la grabación de su voz. A la luz de esa narrativa, razona que el peticionario por conducto de sus empleados o sus representantes procuraba obtener su consentimiento escrito. Indica que a pesar de que no concedió la autorización, los codemandados lanzaron la canción *Dos mil 16* con su voz. A base de tales hechos, contiende que no puede haber dudas de que según las alegaciones, el peticionario dio una orden o instrucción de la cual se benefició personalmente. Por tanto, considera que una lectura integrada de las alegaciones permite concluir que estas son suficientes para activar la presunción legal de responsabilidad del patrono en contra del señor Assad Byrne.

Examinado sosegadamente el recurso presente, disponemos que procede expedir el auto de *certiorari*. Ostentamos la facultad en ley para intervenir en la determinación impugnada, pues nos encontramos ante la denegatoria de una moción dispositiva según establece la Regla 52.1 de Procedimiento Civil, *supra*. A su vez, la controversia ante nos permite nuestra revisión en una etapa propicia del caso de conformidad a la Regla 40 del Tribunal de Apelaciones, *supra*. Además, en virtud de esta determinación apelativa, procuramos examinar una *Resolución* cuya disposición es contraria al derecho procesal de nuestro ordenamiento jurídico.

**En la atención de este recurso nos limitaremos a evaluar la suficiencia de las alegaciones al amparo de los criterios establecidos en las Reglas 6.1 y 10.5 de Procedimiento Civil, *supra*. Por tanto, toda vez que la contención se centra en las alegaciones, resulta inmeritorio discutir el primer señalamiento de error en torno a la Ley Núm. 139-2011,**

*supra.* **Así puntualizado, pasemos a resolver la controversia ante nuestra consideración. Veamos.**

En la *Demanda* en cuestión la señora De La Cruz Hernández describe a modo de alegación al demandado-peticionario de la siguiente manera:

> 23. El codemandado, Noah Kamil Assad Byrne, mejor conocido como Noah Assad ("Noah Assad" o "el codemandado Assad"), es una persona natural, mayor de edad, comerciante y residente en San Juan, Puerto Rico, quien maneja la carrera del artista Benito A. Martínez Ocasio y controla de forma las cuentas, dineros, activos, ingresos, frutos, acciones y/o participaciones propietarias en entidades corporativas que pertenecen a él, el artista o ambas partes.[12]

De igual modo, detalla la relación jurídica que desempeña el señor Assad Byrne con Rimas Entertainment en la siguiente alegación:

> 24. La codemandada, Rimas Entertainment, LLC ("Rimas Entertainment"), es una corporación y/o compañía de responsabilidad limitada, creada y operada al amparo de las leyes de Puerto Rico, en la cual el codemandado Assad es dueño y/o mantiene una participación propietaria sustancial. Esta entidad es dueña, posee, mantiene, maneja y/o administra valiosos activos, particularmente en el mundo de la música urbana y espectáculos afines, incluyendo contratos de representación, promoción y/o presentación con artistas tales como Bad Bunny, Tommy Torres, Jowell & Randy, Arcángel y otros. Se trae a este pleito a la codemandada Rimas Entertainment en la medida en que podría verse afectada por el resultado de las reclamaciones presentadas en este caso.

A su vez, en la siguiente alegación reconoce la existencia de una persona jurídica que lleva el nombre del demandado-peticionario:

> 26. La codemandada, Noah Assad, LLC, es una corporación y/o compañía de responsabilidad limitada, creada y operada al amparo de las leyes de Puerto Rico. Esta entidad es dueña, posee, mantiene, maneja y/o administra valiosos activos, particularmente en el mundo de la música urbana y espectáculos afines. Además, se trae a este pleito a la codemandada Noah Assad, LLC porque podría verse afectada por el resultado de las reclamaciones presentadas en este caso.[13]

Así establecido, surge de la *Demanda* en referencia las siguientes alegaciones levantadas específicamente en contra del señor Assad Byrne y otros codemandados:

> 75. Luego de varios años, específicamente el 3 de mayo de 2022, Jomar D. Dávila Narváez ("Dávila"), en representación de Noah Assad, Rimas y Martínez, se comunicó con De La Cruz mediante la plataforma social de Instagram.
>
> 76. A través de un mensaje directo, Dávila le envió a De La Cruz su número de teléfono, le comentó que tenía que hablar con ella. Acto seguido, le pidió que lo llamara.

---

[12] Apéndice de la parte peticionaria, pág. 28.
[13] Apéndice de la parte peticionaria, pág. 29.

77. De La Cruz llamó a Dávila esa misma noche. En la llamada, Dávila le mencionó: "Yo sé que no te gusta hablar de Voldemort [refiriéndose a Martínez], pero tengo que preguntarte algo."

78. En ese entonces, Dávila le explicó que a Martínez le interesaba comprar el "tag" que grabó De La Cruz con su voz diciendo "Bad Bunny Baby" y que pusiera un precio para ellos (Martínez y Rimas) comprarlo para siempre.

79. Dávila le ofreció a De La Cruz dos mil dólares ($2,000.00) para comprar el "tag".

80. De La Cruz se negó a recibir esa cantidad y le informó que, incluso, ya ese "tag" está en la canción "Pa Ti" con millones de vistas violando sus derechos. Además, le reiteró que como único formalizaría un acuerdo es si este se llevaba a cabo por escrito, como obliga la ley.

81. Ante ello, entonces Dávila le preguntó a De La Cruz que si él le podía pasar su número a Rimas para que negociaran, a lo que De La Cruz accedió.[14]

Aun tomando como ciertas las alegaciones precitadas de manera liberal a favor de la demandante, no surge una causa de acción judicial particular en contra del señor Assad Byrne. Más bien, los hechos expuestos constituyen una secuencia narrativa que concluyó con una gestión efectuada por el señor Dávila Nevárez, quien, según alegado, representó al aquí peticionario. Así pues, de estas alegaciones solo se desprende que la actuación del tercero finalizó cuando le preguntó a la señora De la Cruz Hernández si podía brindar su número telefónico a Rimas.

Reconocemos, no obstante, que la *Demanda* objeto de este recurso no se limita a las alegaciones previamente referidas. Por eso, como parte de nuestro ejercicio revisorio examinamos con detenimiento las ciento ochenta y ocho (188) alegaciones. De nuevo, a esos fines, efectuamos nuestro análisis procesal y tomamos como cierta la totalidad de las alegaciones de manera favorable a la demandante. Sin embargo, no identificamos un alegado hecho dirigido al señor Assad Byrne en calidad de su persona natural. Tampoco en aquellas alegaciones en las que se hace referencia directa a todas las partes demandadas contemplamos un hecho levantado en su contra que exponga una reclamación que motive la concesión de un remedio.[15]

---

[14] Apéndice de la parte peticionaria, págs. 35-36.

[15] Puntualizamos que en este examen jurídico revisamos con sumo cuidado la totalidad de la *Demanda*, así como aquellas alegaciones en las que la señora De La Cruz Hernández alude a todos los codemandados correspondientes a las siguientes enumeraciones: (130), (131), (132), (136), (161) y (162). Apéndice de la parte peticionaria, págs. 41, 42, 47.

Así pues, observamos que la demandante adopta de manera generalizada, y no específica, numerosas alegaciones conclusivas en contra de otros demandados y las dirige automáticamente en contra del demandado-peticionario. La insuficiencia en la relación de sus alegaciones contraviene con el estándar de plausibilidad adoptado en nuestro ordenamiento jurídico.

En vista de los hechos expuestos, disponemos que respecto al demandado-peticionario no se incluyó un mínimo de detalle que le informe adecuadamente sobre los actos lesivos que causaron el alegado perjuicio según requiere nuestro derecho procesal. Véase *Rivera Candela v. Universal Insurance Company, supra.* Reconocemos que tal proceder imposibilita que el señor Assad Byrne tenga un grado de información suficiente sobre las alegaciones, lo cual le posiciona consecuentemente en un estado de indefensión. Por tanto, una lectura ponderada de la *Demanda* nos permite concluir que, de manera principal o en la alternativa, no existe remedio alguno en derecho que la parte demandante pueda invocar en su contra.

En consecuencia, resolvemos que incidió el Tribunal de Primera Instancia al denegar la solicitud de desestimación. Le correspondía emitir un análisis cuidadoso a tenor con las Reglas 6.1 y 10.2(5) de Procedimiento Civil, *supra*, para simplemente constatar la inobservancia de alegaciones suficientes en contra del demandado-peticionario. En vista de lo anterior, revocamos la *Resolución* recurrida, y en efecto, ordenamos la desestimación de la *Demanda* instada en contra del señor Assad Byrne.

**IV.**

Por los fundamentos que anteceden, expedimos el auto de *certiorari*, y revocamos la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones